RACHELE R. BYRD (SBN 190634)
MARISA C. LIVESAY (SBN 223247)
BRITTANY N. DEJONG (SBN 258766)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIVA STEIN,<br><br>              Plaintiff,<br><br>   v.<br><br>WILLIAM LYON HOMES, WILLIAM H. LYON, MATTHEW R. ZAIST, DOUGLAS K. AMMERMAN, ERIC A. ANDERSON, GARY H. HUNT, MATTHEW R. NIEMANN, LYNN CARLSON SCHELL, and THOMAS F. HARRISON,<br><br>              Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Shiva Stein ("Plaintiff"), by her attorneys, makes the following allegations against William Lyon Homes (sometimes referred to herein as the "Company") and the members of the board of directors of William Lyon Homes (the "Board" or "Individual Defendants," along with William Lyon Homes, collectively referred to as the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed acquisition (the "Proposed Transaction") of William Lyon Homes by affiliates of Taylor Morrison Home Corporation ("Taylor Morrison"). The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

## INTRODUCTION

1. This is an action brought by Plaintiff to enjoin the Proposed Transaction whereby Tower Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Taylor Morrison, will merge with and into William Lyon Homes, with William Lyon Homes continuing as the surviving corporation and as a wholly owned subsidiary of Taylor Morrison in the Proposed Transaction for per share consideration of: (i) 0.800 of a fully paid and nonassessable shares of Taylor Morrison common stock; plus (ii) $2.50 in cash (the "Merger Consideration"). The Board has unanimously recommended to the Company's stockholders that they vote for the Proposed Transaction at the special meeting of the William Lyon Homes shareholders. The closing is expected in the first half of 2020.

2. To convince William Lyon Homes stockholders to vote in favor of the Proposed Transaction, on December 6, 2019, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") with the Securities and Exchange Commission ("SEC"). The Registration Statement violates Sections 14(a) and 20(a) of the Exchange Act by

noncompliance with Regulation G and SEC Rule 14a-9 (17 C.F.R. § 244.100 and 17 C.F.R. § 240.14a-9, respectively).

3. Defendants have failed to disclose certain material information necessary for William Lyon Homes stockholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Registration Statement materially incomplete and misleading.

4. In particular, the Registration Statement contains materially incomplete and misleading information concerning the financial forecasts for the Company prepared and relied upon by the Board in recommending to the Company's stockholders that they vote in favor of the Proposed Transaction. The same forecasts were used by William Lyon Homes' financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in conducting its valuation analyses in support of its fairness opinion. The Registration Statement also contains materially incomplete and misleading information concerning certain financial analyses performed by J.P. Morgan.

5. The material information that has been omitted from the Registration Statement must be disclosed prior to the forthcoming stockholder vote in order to allow the stockholders to make an informed decision regarding the Proposed Transaction.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violations of Regulation G and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, all material information discussed below is disclosed to William Lyon Homes stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated without corrective disclosures, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the

Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that does sufficient business in California or an individual who has sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice. All of the Defendants conduct business and/or maintain offices in California. The corporate office of William Lyon Homes is located at 4695 MacArthur Court, 8th Floor, Newport Beach, California 92660.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because William Lyon Homes is headquartered in this District.

**PARTIES**

10. Plaintiff has owned the common stock of William Lyon Homes since prior to the announcement of the Proposed Transaction herein complained of and continues to own this stock.

11. William Lyon Homes is a corporation duly organized and existing under the laws of Delaware and maintains its principal offices in Newport Beach, California. William Lyon Homes is, and at all relevant times hereto was, listed and traded on the New York Stock Exchange under the symbol "WLH."

12. Defendant William H. Lyon is the Company's Executive Chairman and Chairman of the Board and has been a member of the Board since 2000.

13. Defendant Matthew R. Zaist is the Company's President and Chief Executive Officer and has been a member of the Board since 2016.

14. Defendant Douglas K. Ammerman has been a member of the Board since 2007.

15. Defendant Eric A. Anderson has been a member of the Board since 2018.

16. Defendant Gary H. Hunt has been a member of the Board since 2005.

17. Defendant Matthew R. Niemann has been a member of the Board since 2012.

18. Defendant Lynn Carlson Schell has been a member of the Board since 2012.

19. Defendant Thomas F. Harrison has been a member of the Board since 2016.

20. The Defendants referred to in paragraphs 12-19 are collectively referred to herein as the "Individual Defendants" and/or, collectively, the "Board."

21. The Defendants referred to in paragraphs 11-19 are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

*The Proposed Transaction*

22. On November 6, 2019, William Lyon Homes and Taylor Morrison jointly announced that it had entered into the Agreement and Plan of Merger (the "Merger Agreement"):

> SCOTTSDALE, Ariz., Nov. 6, 2019 /PRNewswire/ -- Taylor Morrison Home Corporation (NYSE: TMHC), a leading national homebuilder and developer, and William Lyon Homes (NYSE: WLH), one of the nation's largest homebuilders in the Western United States, today announced they have entered into a definitive agreement pursuant to which Taylor Morrison will acquire all of the outstanding shares of William Lyon Homes common stock for per share consideration of (1) $2.50 in cash and (2) 0.800 shares of Taylor Morrison common stock, implying a company value for William Lyon Homes of $21.45 per

- 4 -

share or $2.4 billion including assumption of debt, yielding an attractive purchase price multiple of 1x book. The transaction consideration mix consists of approximately 90 percent Taylor Morrison stock and 10 percent cash. Based on current trading, Taylor Morrison stockholders will own approximately 77 percent of the combined company while William Lyon Homes stockholders will own approximately 23 percent.

The transaction has been unanimously approved by the Boards of Directors of both Taylor Morrison and William Lyon Homes and will be submitted to the stockholders of William Lyon Homes for approval. The issuance of shares of Taylor Morrison common stock in the transaction will also be submitted to the stockholders of Taylor Morrison for approval. The transaction is expected to close late in the first quarter or early in the second quarter of 2020 and the closing is subject to the satisfaction of customary closing conditions. William H. Lyon, executive chairman and chairman of the board and holder of approximately 42 percent of the voting power of William Lyon Homes common stock, has agreed to vote all of the shares of William Lyon Homes common stock controlled by him in support of the transaction.

"The agreement to acquire William Lyon Homes marks a historic day for Taylor Morrison as we continue to grow our business in smart and meaningful ways," said Sheryl Palmer, Taylor Morrison chairman and CEO. "The

combined business provides the unique opportunity to gain increased local scale and expertise within six of our major markets, while expanding Taylor Morrison into Washington, Oregon and Nevada. We've long aspired to be in the Pacific Northwest and have looked for the right point of entry at the right time and at the right price—and that's exactly what this represents. This will be our sixth builder acquisition in seven years and a demonstration of the proven discipline and expertise in M&A that we have developed over the years."

The strategic combination creates the nation's fifth largest homebuilder based on the last 12 months (LTM) of closings, and firmly places Taylor Morrison in a Top 5 position in 16 of the combined 23 markets with an estimated 14,200 closings for the pro forma combined company.

"William Lyon Homes' legacy spans more than six decades of outstanding construction and customer care, and our team of professionals has set a high standard for the homebuilding industry," said Matthew R. Zaist, William Lyon Homes president and CEO. "The combined business will represent a powerhouse of a builder that can meet the strong demand of entry-level and first-time move-up buyers—consumer segments that represent 85 percent of William Lyon's closings last year. We are excited to join forces with Taylor Morrison and draw upon their proven track record and greater access to scale efficiencies to meet

consumer demand with a reputable, quality product."

"William Lyon Homes is a family business rooted in strong values and tradition, which makes us delighted to join a company with one of the most recognized and highly regarded cultures in homebuilding," said William H. Lyon, William Lyon Homes executive chairman and chairman of the board. "The decision to partner with Taylor Morrison was based on shared strategic alignment, likeminded core values, and a long history of integrity. We are confident in the success Taylor Morrison demonstrates through its reputation of leadership, quality construction and unparalleled customer experience and know our teams, our customers and our stockholders will be in good hands."

Citigroup Global Markets, Inc. served as exclusive financial advisor to Taylor Morrison and Paul, Weiss, Rifkind, Wharton & Garrison LLP acted as Taylor Morrison's legal counsel. J.P. Morgan Securities LLC served as exclusive financial advisor to William Lyon Homes and Latham & Watkins, LLP acted as William Lyon Homes' legal counsel.

***The Materially Misleading and Incomplete Solicitation Statement***

23. On December 6, 2019, Defendants caused the Registration Statement to be filed with the SEC in connection with the Proposed Transaction. The Registration Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However,

the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Financial Forecasts*

24. The Registration Statement discloses tables for William Lyon Homes Management Projections and Taylor Morrison Management Projections for William Lyon Homes (the "Projections"). However, the Registration Statement fails to provide material information concerning these Projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Transaction. Registration Statement at 95-96. These financial forecasts were also relied upon by the Company's financial advisor, J.P. Morgan, in rendering its fairness opinion.

25. With respect to the Projections, the Registration Statement fails to provide: (i) the value of certain line items used to calculate Total Adjusted Gross Margin, Total Adjusted Pre-Tax Income, Unlevered Free Cash Flow, EBITDA, Adjusted EBIDTA, EBIT and NOPAT, all of which are non-GAAP measures; (ii) a reconciliation to its most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a); and (iii) stock-based compensation.

26. The SEC has indicated that if the most directly comparable GAAP measure is not accessible on a forward-looking basis, the company must disclose that fact, provide any reconciling information that is available without unreasonable effort, identify any unavailable information and disclose the probable significance of that information. A company is permitted to provide the projected non-GAAP measure, omit the quantitative reconciliation and qualitatively explain the types of gains, losses, revenues or expenses that would need to be added to or subtracted from the non-GAAP measure to arrive at the most directly comparable GAAP measure, without attempting to quantify all those items.

27. When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific, non-GAAP financial measures (as William Lyon Homes included in the Registration Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherrypicking; and the use of cash per share data. I strongly urge companies to carefully

consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

29. The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading and has therefore heightened its scrutiny of the use of such forecasts.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DI") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

30. More importantly, the C&DI clarifies when the business combination exemption does not apply:

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (last visited July 3, 2019) (emphasis added).

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE AND FINANCIAL REGULATION (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited Mar. 7, 2019); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html (last visited Dec. 10, 2019).

[3] *Non-GAAP Financial Measures*, U.S. SECURITIES AND EXCHANGE COMMISSION (Apr. 4, 2018), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm #101 (last visited Mar. 7, 2019). To be sure, there are other situations where Regulation G would not apply but are not applicable here.

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

31. Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party, such as a financial advisor, has utilized projected non-GAAP financial measures to render a report or opinion to the Board. To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

32. Thus, to bring the Registration Statement into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

*Financial Analyses*

33. With respect to J.P. Morgan's *Selected Transaction Analysis*, the Registration Statement fails to disclose the specific premiums for each of the target companies analyzed by J.P. Morgan.

34. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, for

William Lyon Homes, the Registration Statement fails to disclose: (i) the underlying inputs used to derive the discount rates from 7.25% to 8.25%; (ii) the terminal values of the Company; (iii) the range of illustrative terminal values for William Lyon Homes; and (iv) the basis for applying perpetuity growth rates ranging from 0.25% to 0.75%.

35. With respect to J.P. Morgan's *Public Trading Multiples* analysis for Taylor Morrison, the Registration Statement omits the financial metrics for each of the selected companies, or even summary statistics as to those same financial metrics. Instead, the Registration Statement discloses only the reference range selected by J.P. Morgan, without reference to any of the actual multiples found in its analysis. Furthermore, the Registration Statement omits the value of Taylor Morrison's projected earnings per share for the year ending 2019 and 2020 and estimated tangible book value as of September 30, 2019 used by J.P. Morgan to prepare a range of fair values for the merger consideration in the Public Trading Multiples analysis. These values, which are purportedly derived from forecasts of the management of Taylor Morrison, were never disclosed anywhere in the Registration Statement.

36. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for Taylor Morrison, the Registration Statement fails to disclose: (i) J.P. Morgan's basis for applying a terminal value growth rate ranging from 0.25% to 0.75%; (ii) the underlying inputs used to derive the discount rate ranging from 6.75% to 7.75%; (iii) Taylor Morrison's unlevered free cash flows for 2020-2024; and (iv) the range of illustrative terminal values for Taylor Morrison.

37. In sum, the Registration Statement independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the Registration Statement independently contravenes the SEC rules and regulations, Defendants violated Sections

14(a) and Section 20(a) of the Exchange Act by filing the Registration Statement to garner votes in support of the Proposed Transaction from William Lyon Homes shareholders.

38. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will not be able to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## FIRST CAUSE OF ACTION
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

39. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

40. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any [registration statement] or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41. As set forth above, the Registration Statement omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

42. The failure to reconcile the numerous non-GAAP financial measures included in the Registration Statement violates Regulation G and constitutes a violation of Section 14(a).

## SECOND CAUSE OF ACTION
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

43. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

44. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading…" 17 C.F.R. § 240.14a-9.

45. Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading." 17 C.F.R. § 244.100(b).

46. Defendants have issued the Registration Statement with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable

grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.

50. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting material facts constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

51. William Lyon Homes is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

52. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## THIRD CAUSE OF ACTION
### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of William Lyon Homes within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of William Lyon Homes, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing the Registration Statement.

58. In addition, as the Registration Statement sets forth at length, and as

described herein, the Individual Defendants were involved in negotiating, reviewing and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B. In the event that the proposed transaction is consummated, rescinding it and setting it aside, or awarding rescissory damages;

C. Awarding compensatory damages against Defendants, individually and severally, in an amount to be determined at trial, together with pre-judgment and post-judgment interest at the maximum rate allowable by law, arising from the Proposed

Transaction;

D. Awarding Plaintiff the costs and disbursements of this action and reasonable allowances for fees and expenses of Plaintiff's counsel and experts; and

E. Granting Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: December 10, 2019

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Rachele R. Byrd*
RACHELE R. BYRD
MARISA C. LIVESAY
BRITTANY N. DEJONG
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

**Of Counsel**:

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
GLORIA KUI MELWANI
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Counsel for Plaintiff*

807312